MOYES SELLERS & HENDRICKS
Keith L. Hendricks (No. 012750)
Cody J. Jess (No. 025066)
Scott R. Goldberg (No. 015082)
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
khendricks@law-msh.com
cjess@law-msh.com
sgoldberg@law-msh.com

*Attorneys for Shady Lane Investors, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CHAPTER 11 |
| KLJ ORCHARD VENUES, LLC, | Case No. 2:20-bk-07308-SHG |
| Debtor. | **MOTION TO COMPEL ASSUMPTION OR REJECTION OF NONRESIDENTIAL REAL PROPERTY LEASE, PAYMENT OF ADMINISTRATIVE RENT, AND FOR RELATED RELIEF** |

Pursuant to 11 U.S.C. § 365 and Bankruptcy Rule 6006(b), Shady Lane Investors, LLC ("**Shady Lane**") hereby requests that the Court enter an order:

(i) directing Debtor KLJ Orchard Venues, LLC ("**Debtor**") to assume or reject the unexpired Retail Lease dated June 22, 2015 ("**Lease**") entered into between Shady Lane as landlord and the Debtor as tenant, on or before September 16, 2020, the date the Debtor is obligated to file its plan of reorganization pursuant to 11 U.S.C. § 1189(b);

(ii) directing the Debtor to immediately pay to Shady Lane all amounts held in the Debtor's segregated debtor-in-possession bank account that was established for the purpose of depositing stub and reduced rent as agreed to between Shady Lane and the Debtor;

(iii) directing the Debtor to pay the full rental amount of $32,653.58 per month,

as well as all percentage rent owing under the Lease, during the pendency of the Debtor's bankruptcy case;

(iv)   in the event the Court finds cause to grant the Debtor relief under 11 U.S.C. § 365(d)(3), the Debtor should be directed to pay all deferred post-petition rent to Shady Lane no later than August 18, 2020, the 61st day after the Debtor's petition date of June 18, 2020 (the "**Petition Date**"); and

(v)   granting Shady Lane stay relief to terminate the Lease in the event the Debtor fails to do any of (i)-(iv) above.

This *Motion to Compel Assumption or Rejection of Nonresidential Real Property Lease, Payment of Administrative Rent, and for Related Relief* (the "**Motion**") is more fully supported by the following Memorandum of Points and Authorities, the exhibits attached hereto, and the entire relevant record in this case.

## MEMORANDUM OF POINT AND AUTHORITIES

**I.   FACTUAL BACKGROUND**

1.   On or about June 22, 2015, Shady Lane and the Debtor entered into the Lease, a copy of which is attached hereto as **Exhibit** "**1**."

2.   Pursuant to the Lease, the Debtor leases certain nonresidential real property from Shady Lane consisting of two buildings – the "Restaurant Building" and the "Market Building" – located at 7100 North 12th Street, Phoenix, Arizona 85020 (the "**Property**").

3.   Among other things, the Lease is a triple net (NNN) lease that provides for an initial ten-year term, subsequent renewal terms, annual base rent in the current approximate amount of $309,557.82, and certain percentage rent based upon the Debtor's gross sales. *See generally* Lease.

4.   Exclusive of the Debtor's percentage rent obligation, the Debtor's current monthly Lease payment totals $32,653.58.

5. Through the Debtor's wholly-owned entities, Luci's at the Orchard, LLC and Nadel's at the Orchard, LLC, the Debtor operates three interrelated business at the leased premises: "Luci's at the Orchard," "Pomelo at the Orchard," and "Splurge Ice Cream and Candy Shop."

6. Almost immediately after Shady Lane and the Debtor entered into the Lease problems arose, specifically with respect to the Debtor's inability to perform all of the obligations under the Lease, including the payment of rent. *See, e.g.*, October 17, 2016 letter from Denise Holliday, Esq., counsel to the Debtor, a copy of which is attached hereto as **Exhibit** "**2**" ("It is clear to me that the parties did not accurately predict the costs to create and operate this venue and the challenges the parties would face in that process . . . As you know by our discussions, my client is invoking this clause and requesting the parties immediately address several issues that are seriously impacting the financial success of this business venture. ***This is causing my client to operate at a loss and creates a situation that requires the principals to work without any compensation. This simply is not sustainable***.") (emphasis added); March 8, 2018 letter from Michael S. Catlett, Esq., co-counsel for the Debtor, a copy of which is attached hereto as **Exhibit** "**3**" ("As you know, our clients began operating on the Orchard Property in the Summer of 2016. ***Within just a couple of months, it became readily apparent to our clients that the costs associated with the property were untenable to the long-term success of [the Debtor] and the Orchard Property.***") (emphasis added).

7. For the last three years, the Debtor and Shady Lane (among others) have been engaged in protracted, multi-year litigation over, primarily, the Debtor's ability to perform under the terms of the Lease. *See* Complaint, Case No. CV2017-008808, ¶ 37, a copy of which is attached hereto as **Exhibit** "**4**" ("[Shady Lane, *et al.*] have breached the [L]ease by failing to ever negotiate in good faith to properly correct and amend it as they clearly agreed to.").

8. On May 29, 2020, and after previously being stayed by certain of Governor Ducey's orders, Shady Lane provided notice of the Debtor's multiple defaults under the Lease, and Shady Lane's intention to initiate proceedings to evict the Debtor from the Property. *See* May 29, 2020 letter from Keith L. Hendricks, Esq., a copy of which is attached hereto as **Exhibit** "**5**."

9. After further negotiations between Shady Lane and the Debtor broke down, the Debtor sought bankruptcy protection.

10. On the Petition Date, the Debtor sought relief under Chapter 11 of the United States Code, seeking to reorganize its affairs under the recently-enacted Subchapter V, 11 U.S.C. § 1181, *et seq*.

11. In support of the Debtor's first day motions, Mr. Kenneth Schnitzer, who indirectly owns the Debtor through his entity Lucy's Urban Concepts, LLC, submitted a declaration (the "**Schnitzer Declaration**"). *See* DE 16.

12. In the Schnitzer Declaration, Mr. Schnitzer recognizes the nearly over four year dispute over the Debtor's ability to perform under the Lease (*id*. ¶ 13), but incorrectly blames the Debtor's inability to pay rent on the COVID-19 global pandemic. *See id*. ¶¶ 15, 16.

13. Despite Mr. Schnitzer avowing under the penalty of perjury that "[the Debtor] has always made its Lease payments in a timely manner . . . [it] was only [when Governor Douglas Ducey issued a March 11 declaration] that [the Debtor] could not afford to make its Lease payments" (*id*. ¶ 14), by June 2020, the Debtor had run up a nearly $170,000 tab for arrearages owed under the Lease dating back to February 2020. *See* Resident Ledger dated June 23, 2020, a copy of which is attached hereto as **Exhibit** "**6**."

14. On June 19, 2020, the Debtor filed its *Emergency Motion for Entry of Order (I) Extending Time for Performance of Obligations Arising Under Unexpired Non-*

*Residential Real Property Lease, and (II) Granting Related Relief* (the "**Lease Motion**") [DE 13].

15. Through the Lease Motion, the Debtor proposed to pay Shady Lane $23,500 per month (the "**Reduced Rent**") for July and August 2020, and sought to defer without assurance of payment, the unpaid amounts due and owing over that two-month period totaling $18,307.16 (the "**Deferment Period**"). The Lease Motion further provided for the $18,307.16 to be treated as an administrative expense claim to be paid pursuant to a plan of reorganization that has not yet been filed. *See generally* Lease Motion.

16. Additionally, during the Deferment Period, the Debtor sought an order staying Shady Lane from taking any action to protect its interest in the Lease, including preventing Shady Lane from seeking stay relief, compelling the Debtor's performance of any obligations under the Lease other than the payment of Reduced Rent, and/or compelling the Debtor to reject, assume, or assign the Lease. *Id*.

17. The basis for the relief sought in the Lease Motion is allegedly the havoc wreaked upon the Debtor by the COVID-19 global pandemic: "[a]s a result of the unprecedented pandemic and nationwide governmental directives mandating business shutdowns – through no fault of the Debtor – the Debtor and its estate is substantially and materially precluded from realizing the full benefit from use of the real property." *Id*. at 2:21-24; *see also, generally*, Lease Motion.

18. Shady Lane objected to the relief sought in the Lease Motion (*see Preliminary Objection to Emergency Motion re: Unexpired Non-Residential Real Property Lease* (the "**Objection**") [DE 31]), arguing that the Debtor's cash flow budget illustrated that the Debtor had no means of paying the nearly $20,000 shortfall anytime soon after the Deferment Period ended, and that nothing in 11 U.S.C. § 105 authorized the Court to stay Shady Lane from exercising its rights under other sections of the Bankruptcy Code. *See generally* Objection.

19. At the June 24, 2020 preliminary hearing on the Lease Motion (the "**Preliminary Hearing**"), Shady Lane and the Debtor agreed that the Debtor would open an escrow account and immediately deposit stub rent owing under the Lease for June, as well as the Reduced Rent requested in the Lease Motion when it was due on July 1, 2020.

20. So long as the parties were negotiating in good faith to resolve the Debtor's past, current, and future obligations under the Lease pending a final hearing on the Lease Motion on July 13, 2020, the aforementioned funds, totaling $32,900 (the "**Partial Rent**"), would be held in escrow.

21. Shady Lane's and the Debtor's agreement regarding the payment of the Partial Rent was placed on the record at the Preliminary Hearing.

22. Despite the parties' agreement, the Debtor did not open an escrow account for the Partial Rent. Instead, the Debtor deposited the Partial Rent in an ordinary debtor-in-possession bank account. *See* email correspondence from James Cross, Esq., a copy of which is attached hereto as **Exhibit** "**7**."

23. Despite the parties' agreement, as well as the Debtor's representations at the Preliminary Hearing that the Reduced Rent was being offered to Shady Lane to cover Shady Lane's carrying costs, the Debtor has refused to turn over the Partial Rent to Shady Lane after negotiations stalled and the parties reached a stalemate. *See id*.

## II. LEGAL ANALYSIS

Preliminarily, while Shady Lane sincerely sympathizes with every person and business truly affected by the devastation wrought by the COVID-19 global pandemic, this case was not filed to protect the Debtor from the effects of COVID-19. In truth, the Debtor sought bankruptcy protection to prevent Shady Lane from evicting the Debtor after a multiyear dispute over the Debtor's inability to comply with the terms of the Lease. The Debtor sued Shady Lane over three years ago in an effort to force Shady Lane to modify the Lease on terms more favorable to the Debtor. The Debtor's bankruptcy filing is yet

1  another tactic to compel Shady Lane to accept less than what the parties negotiated and
2  agreed to over five years ago.

3  **A.  THE DEBTOR SHOULD BE COMPELLED TO PROMPTLY ASSUME OR REJECT THE LEASE UNDER 11 U.S.C. § 365**

5  The treatment of executory contracts and unexpired leases is governed by 11 U.S.C. § 365.  Section 365 applies to assumption and rejection of both executory contracts and unexpired leases.  11 U.S.C. § 365(a).  A debtor-in-possession may assume or reject an executory contract or unexpired lease of the debtor upon the bankruptcy court's approval. *Id*.  If an unexpired lease of nonresidential real property is not assumed by the debtor-in-possession by the earlier of 120 days after commencement of the bankruptcy case or the date of entry of an order confirming a plan, the lease is deemed rejected and the subject property must be surrendered.  11 U.S.C. § 365(d)(4)(A).  Additionally, the aforementioned timeframe may be extended an additional 90 days for cause, potentially extending the time to assume or reject up to 210 days post-petition.  11 U.S.C. § 365(d)(4)(B).

Pursuant to 11 U.S.C. § 365(d)(2), the debtor-in-possession may be compelled to assume or reject an executory contract or unexpired lease within a shortened or specific period of time.  11 U.S.C. § 365(d)(2).  Section 365(d)(2) was intended to "prevent parties in contractual and lease relationships with the Debtor from being left in doubt concerning their status vis-à-vis the estate."  4 Rep. No. 95-595, 95th Cong., 1st Sess. 348-49 (1977).  Section 365(d)(2), however, only applies to executory contracts and unexpired leases of "residential real property."  *Id*.; *see also In re Equity Res., Inc*., BK-S-08-15615-MKN, 2008 Bankr. LEXIS 5170, *8 (Bankr. D. Nev. July 3, 2008) (recognizing same).

It is well established that "[t]he determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case."  *In re Adelphia Comm. Corp.*, 291 B.R. 283, 292 (Bank. S.D.N.Y. 2003) (*citing In re Burger Boys*, 94 F.3d 755, 760 (2nd Cir. 1996)).  While the Lease here is not a

residential real property lease, the Debtor should nevertheless be compelled to assume or reject the Lease by September 16, 2020. As the court in *Equity Res.* held, "absent a showing to the contrary, the Court is not inclined to extend Section 365(d)(2) to nonresidential leases of real property when the Bankruptcy Code provides specific treatment for such leases under Section 365(d)(3) and Section 365(d)(4)." *Id*.

Here, unlike the debtor in *Equity Res.*, the Debtor is proceeding under Subchapter V, which requires the Debtor to file its plan of reorganization no later than 90 days after the Petition Date, or by September 16, 2020. *See* 11 U.S.C. § 1189(b). The truncated timeframe by which the Debtor must file its plan under Subchapter V is the type of "showing to the contrary" suggested by the court in *Equity Res.* as a basis to apply 11 U.S.C. § 365(d)(2) to a nonresidential lease. Given the unique nature of the Debtor's business, the Debtor cannot possibly confirm a plan without assuming the Lease. Accordingly, it is appropriate to require the Debtor to assume or reject the Lease by the time it is required to file its plan. Otherwise, the Debtor is simply spinning its wheels (and on Shady Lane's dime).

Requiring the Debtor to assume or reject the Lease when it files its plan will ensure that creditors know whether a confirmable plan has been proposed, as well as how the Debtor anticipates curing the significant arrearages owing under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) (providing that a lease in default may not be assumed unless the debtor cures such defaults or provides adequate assurance that such defaults will be "promptly cured"). Accordingly, the Debtor should be compelled to assume or reject the Lease on or before the September 16, 2020 deadline to file its Chapter 11 plan of reorganization.

**B. THE DEBTOR SHOULD BE COMPELLED TO IMMEDIATELY TURN OVER SEGREGATED RENT PAYMENTS TO SHADY LANE**

In the Lease Motion and at the Preliminary Hearing, the Debtor alleged that paying the Reduced Rent for the Deferment Period would not only provide the Debtor a much needed respite from the ravages wrought upon its business by COVID-19, but would also

ensure that Shady Lane's carrying costs would be covered. Accordingly, Shady Lane agreed to allow the Debtor to deposit the Reduced Rent into an escrow account while Shady Lane and the Debtor attempted to negotiate a compromise on payment of the post-petition rent. Despite that agreement, not only has the Debtor refused to deposit the Reduced Rent into an escrow account, but the Debtor has refused to turn over the Partial Rent after negotiations stalled and the parties reached a stalemate. *See* Ex. 7.

The Debtor's unwillingness to deposit the Reduced Rent into an escrow account and turn over the Partial Rent to Shady Lane is an express breach of the agreement the parties reached and that was placed on the record at the Preliminary Hearing. Moreover, in failing to turn over the Partial Rent to Shady Lane, Shady Lane is unable to service the carrying costs of the Property, a benefit the Debtor dangled in front of the Court and Shady Lane at the Preliminary Hearing. Accordingly, the Debtor should be compelled to immediately turn over the Partial Rent to Shady Lane.

### C. THE DEBTOR SHOULD BE COMPELLED TO PAY ALL AMOUNTS OWNING UNDER THE LEASE TO SHADY LANE DURING THE PENDENCY OF THE DEBTOR'S BANKRUPTCY CASE

As set forth more fully in the Objection and in Shady Lane's Supplement thereto, filed contemporaneously herewith, "cause" does not exist to grant the Debtor relief under 11 U.S.C. § 365(d)(3). Accordingly, in addition to immediately turning over the Partial Rent to Shady Lane, the Debtor should be compelled to pay the full rental amount of $32,653.58 per month, as well as all percentage rent owing under the Lease, during the pendency of the Debtor's bankruptcy case.

Furthermore, by August 17, 2020, 60 days will have passed since the Debtor filed for bankruptcy protection. By that date, the Deferment Period will have expired, as will any temporary stay afforded the Debtor by 11 U.S.C. § 365(d)(3) (assuming the Court grants the Debtor such relief). Nothing in the Bankruptcy Code, the caselaw interpreting the Bankruptcy Code, or the "COVID-crisis" cases the Debtor cites in the Lease Motion

permits the Debtor to do anything other than render complete performance under the Lease after August 17, 2020. Accordingly, in addition to ordering the Debtor to abide by the terms of the Lease, the Court should enter an order clarifying the Debtor's post-August 17, 2020 obligations, including, but not limited to, the Debtor's obligation to pay all rent owing under the Lease, including percentage rent.

> **D. IN THE EVENT THE COURT IS INCLINED TO GRANT THE DEBTOR RELIEF UNDER 11 U.S.C. § 365(D)(3), THE DEBTOR SHOULD NEVERTHELESS BE COMPELLED TO PAY ALL AMOUNTS THAT ACCRUED UNDER THE LEASE ON OR BEFORE AUGUST 17, 2020**

With respect to an unexpired lease of nonresidential real property, 11 U.S.C. § 365 directs the debtor-in-possession to "timely perform all of the obligations of the debtor" after the case is filed "until such lease is assumed or rejected." *See* 11 U.S.C. § 365(d)(3). For cause shown, the bankruptcy court may, however "extend . . . the time for performance of any such obligation that arises within 60 days after the [petition] date . . . but the time for performance shall not be extended beyond such 60 day period." *Id*. Section 365(d)(3) shall not, however, "be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of [11 U.S.C. § 365(b)(3)]."

In construing 11 U.S.C. § 365(d)(3), the Ninth Circuit advised that:

> In a case brought under Chapter 11, an unexpired lease of nonresidential real property is deemed rejected and the trustee must immediately surrender the property if the trustee does not assume or reject the lease within sixty days after the date of the order for relief, unless the bankruptcy court grants additional time. 11 U.S.C. § 365(d)(4). Until the trustee assumes or rejects an unexpired lease of nonresidential real property, the trustee must perform obligations under that lease in accordance with 11 U.S.C. § 365(d)(3).

*Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 849 (9th Cir. 2001).

The Ninth Circuit further explained that:

> Congress made the provision for trustee compliance broad, extending it to cover all the obligations under a lease. A broad interpretation of this provision

is consistent with the purpose of § 365(d)(3), **which is to ensure immediate payment of lease obligations so that the landlord is not left providing uncompensated services**.

*Id*. at 850-51 (emphasis added).

After its decision in *Cukierman*, the Ninth Circuit reiterated the broad scope of § 365(d)(3): "We have interpreted § 365(d)(3) broadly, consistent with its purpose of ensuring **immediate payment of lease obligations to protect landlords pending the trustee's decision to assume or reject a lease**." *Temecula v. LPM Corp. (In re LPM Corp.)*, 300 F.3d 1134, 1138 (9th Cir. 2002) (*citing Cukierman*, 265 F.3d at 850-51) (emphasis added).

*In re Shoot the Moon, LLC*, Case No. 15-0979-11, 2016 Bankr. LEXIS 1176 (Bankr. D. Mont. Apr. 12, 2016) is instructive. There, the debtor was a party to a nonresidential lease. Almost immediately, a Chapter 11 trustee was appointed. *Id*. at *4. Approximately two months into the case, the lessor filed a motion to compel assumption or rejection, for an administrative expense claim, and to compel immediate payment of rent under 11 U.S.C. § 365(d)(3). *Id*. at *5. The trustee and the lessor later entered into a stipulation on the lessor's motion, whereby the trustee was required to assume or reject the lease by February 18, 2016, approximately four months post-petition. *Id*. at *9-10. The lessor's motion was limited to whether the lessor was required to immediate payment of outstanding post-petition rent. *Id*.

At the hearing on the lessor's motion, the trustee's attorney argued that the trustee did not dispute his obligation to pay the lessor for the post-petition lease payments as an administrative expense claim, but instead argued that the dispute focused on the timing of the payment of that obligation. *Id*. at *10. Instead of paying the lessor immediately as the landlord had requested, the trustee instead proposed grating the lessor an administrative expense claim for the post-petition rent, which the trustee offered to pay after the sale of the estate's assets. *Id*.

After significant discussion of applicate Ninth Circuit authority, the court held that

> The Trustee's failure to pay immediately the lease obligations owing to Prime under the OTB lease is inconsistent with the broad interpretation of § 365(d)(3) and clear holdings of the Ninth Circuit that § 365(d)(3) requires immediate payment under the lease. [*In re LPM Corp.*, 300 F.3d 1134, 1138 (9th Cir. 2002)]; *Cukierman*, 265 F.3d at 850-51.
>
> The Ninth Circuit further held that "the contractual rate of rent, rather than any measure of the value of the trustee's actual use of the property, was entitled to administrative priority under § 365(d)(3)." *Cukierman*, 265 F.3d at 850, citing *In re Pac.-Atl. Trading Co.*, 27 F.3d 401, 405 (9th Cir. 1994). The Ninth Circuit declined to adopt a rule that § 365(d)(3) applies only to obligations that are related to the use of premises because "[u]nder such a rule, landlords would not be paid immediately." *Cukierman*, 265 F.3d at 851.
>
> These decisions of the Ninth Circuit are controlling authority in this district, and do not permit this Court to grant relief from the unambiguous requirement of § 365(d)(3) for immediate payment, as the Trustee urges based on decisions from other circuits, because of possible harm to the estate or other creditors or parties. *Cukierman*, 265 F.3d at 850-51; *Pac-Atl. Trading*, 27 F.3d at 405.

*Id.* at *16. Accordingly, the court in *Shoot the Moon* granted the lessor's motion and ordered the trustee to immediately pay the lessor all post-petition amounts due under the lease. *In re Shoot the Moon, LLC*, 2016 Bankr. LEXIS 1176, at *18-19.

Through the Lease Motion, the Debtor seeks to defer full rent payments pursuant to 11 U.S.C. § 365(d)(3), and essentially offered Shady Lane an administrative expense claim for the difference: "[t]he Debtor is not seeking to waive or indefinitely defer Lease Obligations, and [Shady Lane] will continue to have administrative expense claims to the extent of their Lease and the Bankruptcy Code." Lease Motion, 3:3-5. As Shady Lane argued in its opposition to the Lease Motion, the Debtor's reorganization is far too speculative for Shady Lane to believe that the Debtor will have the ability to pay the an administrative expense claim the Debtor has promised. The Debtor's budget shows negative cash flow at the end of June 2020 (*see* DE 15, Ex. B), illustrating that the Debtor's

estate will not have the cash to pay Shady Lane's administrative expense claim now or any time in the near term.

Like the trustee in *Shoot the Moon*, 2016 Bankr. LEXIS 1176, at *18, who, "[r]ather than timely and immediately paying Prime under the OTB lease as required by § 365(d)(3) . . . seeks an unspecified delay before it pays Prime its administrative claim" (*id*.), the Debtor seeks to take full advantage of the Lease in exchange for payment of an administrative expense claim at some undetermined future date. And like the trustee's position in *Shoot the Moon*, the Debtor's suggestion "is without support under the unambiguous language of § 365(d)(3) and controlling Ninth Circuit authority." *Id*.

In the event the Court finds cause to grant the Debtor relief under 11 U.S.C. § 365(d)(3), which it should not, the Deferment Period ends on August 17, 2020. In compliance with the controlling caselaw cited above, the Debtor should be compelled to immediately pay the deferred rent on that date.

### E. IN THE EVENT THE DEBTOR FAILS TO PERFORM UNDER A-D ABOVE, SHADY LANE SHOULD BE GRANTED STAY RELIEF TO TERMINATE THE LEASE

The Debtor presently has quiet enjoyment of 100 percent of the Property. At the same time, the Debtor is not honoring its contractual obligations to Shady Lane for the Debtor's unfettered use of the Property. The Debtor has not met its burden that "cause" exists under 11 U.S.C. § 365(d)(2): if the facts offered by the Debtor constituted "cause," every Debtor beleaguering under a lease it cannot afford would be entitled to the respite afforded by the statute. That is obviously not the law.

The Bankruptcy Code and the applicable caselaw is clear: in the event the Court finds cause to allow the Debtor the brief breathing spell provided for in 11 U.S.C. § 365(d)(3), thereafter, the Debtor must scrupulously honor the terms of the Lease. There can also be no legitimate dispute that in the event the Court grants the Debtor relief under 11 U.S.C. § 365(d)(3), the Debtor must "immediately" cure the nonpayment of rent that

accrued during the 60-day forbearance period. In the meantime, the Debtor must be compelled to immediately pay Shady Lane the Reduced Rent. Shady Lane and the Debtor had a binding agreement regarding the payment of Reduced Rent; the Debtor is in breach of that agreement.

Finally, because the confirmability of the Debtor's anticipated plan hinges on the Debtor's assumption of the Lease, the Debtor should be compelled to assume or reject the Lease at the same time it proposes its plan; otherwise, any plan without a commitment on the Lease is nothing more than a infeasible "visionary scheme." *See In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (*citing* 5 *Collier on Bankruptcy* para. 1129.02 [11] at 1129-34 (15th ed. 1984)). In the event the Debtor is unable perform as requested herein, Shady Lane should be immediately granted stay relief to terminate the Lease.

### III.  CONCLUSION

WHEREFORE, based upon the foregoing, Shady Lane respectfully requests that the Court enter an order directing the Debtor to: (i) assume or reject the Lease on or before September 16, 2020; (ii) immediately pay to Shady Lane all amounts held in the Debtor's segregated debtor-in-possession bank account that was established for the purpose of depositing stub and reduced rent as agreed to between Shady Lane and the Debtor; (iii) pay the full rental amount of $32,653.58 per month, as well as all percentage rent owing under the Lease, during the pendency of the Debtor's bankruptcy case; and (iv) in the event the Court finds cause to grant the Debtor relief under 11 U.S.C. § 365(d)(3), pay all deferred post-petition rent no later than August 17, 2020. If the Debtor fails to do any of the foregoing, Shady Lane should be granted stay relief to terminate the Lease.

DATED this 10th day of July, 2020.

MOYES SELLERS & HENDRICKS

*/s/ Cody J. Jess, #025066*
Keith L. Hendricks
Cody J. Jess
Scott R. Goldberg
*Attorneys for Shady Lane Investors, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, receipt of which constitutes service under L.R. Bankr. P. 9076-1(a), to the following CM/ECF registrants:

James E. Cross, Counsel for Debtor KLJ Orchard Venues, LLC
jcross@crosslawaz.com

Elizabeth C. Amorosi, Counsel for the United States Trustee
Elizabeth.c.amorosi@usdoj.gov

Christopher C. Simpson, Subchapter V Trustee
christopher.simpson@stinson.com

United States Trustee
USTPRegion14.PX.ECF@usdoj.gov

*/s/ Julie Larsen*